UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------

WAYNE MILLINGTON, AND VANESSA JOHNSON
ON BEHALF OF HERSELF AND HER INFANT
CHILDREN M.J. AND M.J. (2),

                                                    Plaintiffs,

                  -against-

THE CITY OF NEW YORK, CAPTAIN JOSEPH M.
GULOTTA, SERGEANT LANT, POLICE OFFICER
NICHOLAS HATT, POLICE OFFICER LAZAR, POLICE
OFFICER OLIVER, JOHN DOE ##1-4

                                 Defendants.

------------------------------------------------------------ x

**COMPLAINT AND
JURY DEMAND**

**ECF CASE**

## PRELIMINARY STATEMENT

1.    This is a civil rights action in which plaintiffs seek relief for the violation of their rights secured by 42 USC §1983 and the Fourth and Fourteenth Amendments to the United States Constitution, and the laws and Constitution of the State of New York.

2.    The claims arise from a series of incident from September 14 to September 27, 2011, in which Officers of the New York City Police Department ("NYPD"), acting under color of state law, intentionally and willfully searched plaintiff Vanessa Johnson's apartment without a warrant or, if there was a warrant, it was obtained based on information that defendants knew to be false. During that search, the officers claimed to be seeking Wayne Millington.  The officers subsequently falsely arrested plaintiff Wayne Millington, and released him without charges.

3.    Plaintiffs seek monetary damages (special, compensatory, and punitive) against defendants, as well as an award of costs and attorneys' fees, and such other and further relief as the Court deems just and proper.

## JURISDICTION

4.    This action is brought pursuant to 28 U.S.C. §1331, 42 U.S.C. §1983, and the Fourth and Fourteenth Amendments to the United States Constitution.

5.    Venue is laid within the United States District Court for the Eastern District of New York in that Defendant City of New York is located within, and the events occurred within, the boundaries of the Eastern District of New York.

## PARTIES

6.    Plaintiffs are citizens of the United States and at all times here relevant resided in Kings County, New York.

7.    Plaintiff Vanessa Johnson is the mother of M.J. and M.J.(2), and brings these claims on their behalf, as well as on her own.

8.    The City of New York is a municipal corporation organized under the laws of the State of New York.

9.    All others individual defendants ("the officers") are employees of the NYPD, and are sued in their individual capacities.

10.    At all times here mentioned defendants were acting under color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the City and State of New York.

## FACTUAL ALLEGATIONS

11.    On September 14, 2011, Vanessa Johnson and her children's apartment was searched by officers from the NYPD.   Vanessa Johnson had had the lease and resided there for approximately ten and a half months; prior to that, the apartment had been vacant, and at least two years earlier, Wayne Millington had resided there.   No illegal activity of any sort had taken

place in the apartment, or been engaged in by any of its occupants, for at least the ten and a half months that Johnson had lived there.

12.  The officers conducting the search never showed a warrant to Ms. Johnson, though they did display a document bearing a caption that read "In the Matter of the application of Police Officer Hatt of the NYPD for a warrant authorizing the search of" Johnson's apartment, with the warrant number 800-2011, and the Special Narcotics Prosecutor named on the front.  If any warrant was issued, it could only have been issued based on perjurious affidavits or testimony, as no unlawful activity in connection to the apartment had taken place.

13.  While executing the warrant, officers repeatedly asked for information about Wayne Millington and Terry Millington, who were both unknown to Vanessa Johnson.  They then repeatedly accused her of lying when she said she didn't know the Millingtons.

14.  While they searched the apartment, officers handcuffed M.J. and M.J. (2).  M.J.'s handcuffs were extraordinarily tight, and were not loosened, despite protests from him and his mother.  Even if the search of the apartment was lawful, the handcuffing of M.J. and M.J. (2) was not lawful.

15.  In fact, Vanessa Johnson even called 911 to complain that her children were being handcuffed without probable cause, but an officer took plaintiff's phone from her, told the 911 operator that police were already on the scene, and hung up.

16.  The officers also took Vanessa Johnson's phone from her, and conducted an unlawful search of her phone, browsing through its contents, and taking photographs of items of interest to them, including pictures on her phone.

17.  No contraband was found in the apartment, and the police ultimately uncuffed M.J. and M.J. (2), and left the apartment without making any arrests.

18.   Ms. Johnson told someone involved in her tenant association about the incident, who was Wayne Millington's godmother, and word got back to Wayne Millington that police were seeking him.

19.   On September 20, 2011, Millington, through counsel, called the 73rd precinct, where the incident took place, and inquired whether the NYPD was seeking to arrest plaintiff.  Detective Schulman took the call, and responded that plaintiff was not being sought by the NYPD, so far as he could ascertain.

20.   Nonetheless, on September 27, 2011, plaintiff was lawfully on Bristol Street, between Dumont and Livonia, in Brooklyn, at about 2:30 PM.  At that time, Police Officers Lazar and Oliver arrested plaintiff, without probable cause.

21.   Counsel called the 73rd Precinct, to advise that plaintiff was represented by counsel, and that he was not to be questioned.

22.   Plaintiff was told that NYPD officers had been driving around with his picture, to arrest him.  Nonetheless, he was given conflicting explanations of why he was being arrested.  He was told he was "wanted for questioning", and he was told he was wanted on an allegation of a sale of marijuana.

23.   About 12 hours later, plaintiff was released from the precinct without charges.

24.   Plaintiff had not sold marijuana, or committed any other offenses, that would give the police probable cause to arrest him.

## DAMAGES

25.   As a direct and proximate result of the acts of defendants, plaintiff suffered the following injuries and damages:

a.      Violation of his rights pursuant to the Fourth and Fourteenth Amendments to the

United States Constitution to be free from an unreasonable search and seizure;

b.      Physical and emotional trauma and suffering, including fear, embarrassment, humiliation, emotional distress, frustration, extreme inconvenience, anxiety;

c.      Loss of liberty.

## FIRST CAUSE OF ACTION
### (42 U.S.C. § 1983)

26.   The above paragraphs are here incorporated by reference.

27.   Defendants acted under color of law and conspired to deprive plaintiff of his civil, constitutional and statutory rights to be free from unreasonable search and seizure and to due process of law pursuant to the Fourth and Fourteenth Amendments to the United States Constitution, and are liable to plaintiff under 42 U.S.C. §1983.

28.   Defendants falsely arrested plaintiff, and failed to intervene in each other's obviously illegal actions.

29.   Plaintiff has been damaged as a result of defendants' wrongful acts.

## SECOND CAUSE OF ACTION
### (MUNICIPAL AND SUPERVISORY LIABILITY)

30.   The above paragraphs are here incorporated by reference.

31.   The City is liable for the damages suffered by plaintiff as a result of the conduct of its employees, agents, and servants, in that, after learning of its employees' violation of plaintiffs' constitutional rights, it failed to remedy the wrong; it has created policies and customs under which unconstitutional practices occurred and allowed such policies or customs to continue, and it has been grossly negligent in managing subordinates who caused the unlawful conditions and events.

32.   The City has been alerted to the regular use of excessive force and false arrests by its police officers, but has nevertheless exhibited deliberate indifference to such excessive force and false arrests; that deliberate indifference caused the violation of plaintiff's constitutional rights in this case.

33.   The aforesaid event was not an isolated incident.  The City has been aware for some time, from lawsuits, notices of claim, complaints filed with the Civilian Complaint Review Board, and judicial rulings suppressing evidence and finding officers incredible as a matter of law, that a disturbing number of its police officers use excessive force, unlawfully search and seize citizens, bring charges against citizens with no legal basis, perjure themselves in charging instruments and testimony, and fail to intervene in and report the obviously illegal actions of their fellow officers.  Nevertheless, the City has allowed policies and practices that allow the aforementioned to persist, abdicating any effective oversight of its police employees.

34.   For example, the Civilian Complaint Review Board ("the CCRB"), a City police oversight agency, often finds complainants lack credibility based on the fact that such complainants have also brought lawsuits to remedy the wrongs they have experienced, a practice that often results in not substantiating the most serious charges brought to them.  In addition, the CCRB virtually never initiates their own findings of false statements against officers who have made false statements to the CCRB in their own defense, nor do they initiate findings that officers have failed to report their fellow officers' misconduct; thus, officers have no real incentive to come forward, or to testify truthfully at the CCRB.  The CCRB often closes out complaints where the alleged victims, who have pending criminal actions against them, do not cooperate in the investigation, even where the CCRB is able to investigate the allegations independent of the alleged victims.  The CCRB has no enforcement mechanisms once making a

finding against an officer; it can only make recommendations to the NYPD, once finding misconduct by an officer.

35.   The NYPD, once receiving a substantiated complaint by the CCRB, fails to adequately discipline officers for misconduct.  The NYPD Department Advocate, which is endowed with the responsibility of following up on substantiated CCRB charges, is understaffed and under-utilized.  Furthermore, in the extraordinarily rare event that the CCRB substantiates a complaint and the Department Advocate proves the case in an internal trial against an officer, the police commissioner still maintains the power to reduce the discipline against such an officer, a power which the commissioner has exercised.

36.   The Internal Affairs Department of the NYPD takes cases in a completely arbitrary and selective manner, often times interviewing complainants on the record once, before declining the case and forwarding it to the CCRB, who will refuse to go forward with a complaint unless they do their own preliminary interview with the complainant.  Thus, the City erects multiple barriers to moving a case forward, before any further investigation can proceed.

37.   Further, the City has no formal procedures to notify individual officers or their supervisors of unfavorable judicial review of their conduct.  Without such notification, improper search and seizure practices and incredible testimony go uncorrected.

38.   Additionally, according to a report of the New York City Bar Association issued in 2000, the City has isolated its law department from the discipline of police officers, so that civil suits against police officers for actions taken in their capacity as police officers have no impact on the officers' careers, regardless of the outcome of the civil actions.  Alan Hevesi, as New York City Comptroller, in 1999 reported that there was a "a total disconnect" between the settlements of even substantial civil claims and police department action against officers.  These

conditions persist today.

39.   Finally, the City, through the NYPD and the Kings County District Attorney's Office and the Special Narcotics Prosecutor, engaged in an aggressive effort in the fall of 2011, to investigate two Brooklyn gangs, the "Hood Starz" and the "Wave Gang". Pressure was put on police to make arrests and turn arrestees into informants in the Brownsville neighborhood of Brooklyn, where the incidents that form the basis of this complaint took place. The investigations led to a de facto policy of ignoring the constitutional rights of the citizens of Brownsville, in order to pursue the investigations into those two gangs, which resulted in an indictment in January, 2012, of 43 individuals.

40.   The City is aware that all of the aforementioned has resulted in violations of citizens' constitutional rights. Despite such notice, the City has failed to take corrective action. This failure and these policies caused the officers in the present case to violate plaintiffs' civil rights, without fear of reprisal.

41.   Plaintiff has been damaged as a result of the deliberate indifference of the City to the constitutional rights of the City's inhabitants.

WHEREFORE, plaintiff demands judgment against the defendants, jointly and severally, as follows:

A.    In favor of plaintiff in an amount to be determined by a jury for each of plaintiff's causes of action;

B.    Awarding plaintiff punitive damages in an amount to be determined by a jury;

C.    Awarding plaintiff reasonable attorneys' fees, costs and disbursements of this action; and

D.      Granting such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED:       Brooklyn, New York
             January 14, 2013

TO:   New York City                         Very truly yours,
      Corporation Counsel Office
      100 Church Street, 4th floor
      New York, NY  10007                   Stoll, Glickman & Bellina, LLP
                                            By: Andrew B. Stoll (AS8808)
                                            Attorney for Plaintiff
                                            475 Atlantic Avenue
                                            Brooklyn, NY  11217
                                            (718) 852-3710
                                            astoll@stollglickman.com